**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ALEXANDRA GURNEY**<br><br>Plaintiff,<br><br>v.<br><br>**SYNCHRONY BANK**<br><br>Defendant. | Civil Action No. |

## COMPLAINT

Now comes the Plaintiff, Alexandra Gurney ("Ms. Gurney"), by counsel, and sets forth to the Court the following:

### Preliminary Statement

1. This is an action for actual, statutory, and punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1601 *et seq* of the Truth in Lending Act ("TILA"), more specifically 15 U.S.C. §§ 1666-1666j (Fair Credit Billing Act – "FCBA").

### Jurisdiction

2. This Court has jurisdiction as to this case under the provisions of 28 U.S.C. § 1331, and 28 U.S.C. § 1391.

### Parties

3. Ms. Gurney is a natural person who resides in Brockton, Massachusetts. Ms. Gurney is a "consumer" as protected and governed by TILA and the FCBA.

4. Synchrony Financial ("Synchrony") is a consumer financial services company with a principal place of business located at 170 West Election Road, Suite 125, Draper, Utah, 84020 and is authorized to do business in the State of Massachusetts, including within this District.

**Venue**

5. Venue is proper in this Court because Ms. Gurney resides in this District and Division, and a significant part of Ms. Gurney's claims occurred in this District and Division.

**Facts**

6. Plaintiff Alexandra Gurney resides in Plymouth County, Massachusetts.
7. In or around January 2023, Ms. Gurney opened a CareCredit credit card account (the "Account") with Defendant Synchrony Bank ("Synchrony").
8. Ms. Gurney has used the Account only at veterinary clinics in Massachusetts, as her transaction history with Synchrony shows.
9. On October 13, 2025, someone used Ms. Gurney's Account, without her knowledge or permission, to make a $2,044.00 purchase at Vista Site Eye Care, an optical clinic at 817 West 181st Street, New York, New York (the "Charge").
10. Ms. Gurney did not make or authorize the Charge and received no goods or services from it.
11. In mid-October 2025, Ms. Gurney logged into her Account to pay off her balance and saw the Charge. A few days after it was posted, she called Synchrony and reported that she had not made it.

12. The Synchrony agent told Ms. Gurney that a fraud case would be opened and would take four to six weeks. The agent explained that Synchrony would obtain the signed transaction papers from the merchant and mail them to her so she could confirm whether the signature was hers. The agent also told her she would not have to make payments on the Account while the case was open.

13. After that call, Ms. Gurney received a new card in the mail. Synchrony sent no transaction papers and made no follow-up calls or emails.

14. Beginning in early December 2025, Synchrony called Ms. Gurney every day, saying she owed an overdue minimum payment. When she logged into the Account, she saw that Synchrony had charged her two interest charges and a late fee.

15. On or around December 6, 2025, Ms. Gurney called Synchrony about the calls. The agent said Synchrony needed to send her a new card because of suspected fraud. When Ms. Gurney explained that she had reported the Charge two months earlier, the agent told her that no fraud case had ever been opened after her October call.

16. Synchrony then opened a fraud case. Ms. Gurney told the agent she would not pay the Charge, or the interest and late fee that resulted from it, until the Charge was removed. The agent told her she did not have to make any payments while the case was open.

17. The daily collection calls continued. The calls said she had an overdue balance and reminded her that Synchrony reports monthly balances to the credit bureaus.

18. Ms. Gurney called Synchrony again. The agent refused to clear the overdue status or remove the fees and told her to call the fraud department instead.

19. Worried about damage to her credit, Ms. Gurney paid $316.00, the balance that predated the Charge. She did not pay the Charge or the interest and late fees that resulted from it.

20. On December 11, 2025, Ms. Gurney filed a written complaint against Synchrony with the Consumer Financial Protection Bureau, Complaint No. 251212-26790939. She filed it under "Credit card," with the issue "Problem with a purchase shown on your statement."
21. In the complaint, Ms. Gurney identified her CareCredit account and stated that a fraudulent charge of about $2,000 had been made in October using her credit card information. She also described her October report, Synchrony's failure to open a case, the interest and late fees, and the daily collection calls.
22. Upon information and belief, the CFPB forwarded the complaint to Synchrony.
23. In January 2026, Synchrony emailed Ms. Gurney that it had concluded its investigation and found the Charge valid.
24. Synchrony gave three reasons: products from the transaction were shipped to her address, her phone number was used to activate the card, and the card was used to make the purchase.
25. Ms. Gurney never received any products at her address. On information and belief, Synchrony had no shipping or delivery records showing any goods from the Charge were sent to Ms. Gurney’s address, and it never provided any such records to her.
26. Before deciding the validity of the charge, Synchrony never sent Ms. Gurney the signed transaction papers it had promised. It also never contacted her with any questions about the transaction.
27. Ms. Gurney then called Vista Site Eye Care and asked whether Alexandra Gurney, born January 30, 1997, was a patient. The clinic told her she was not. It did have a patient named Alexandra Gurney with the same birth month and day, but a different birth year.

28. Ms. Gurney reported this to Synchrony. The agent still insisted that Ms. Gurney had made the Charge. The agent said Synchrony had on file an image of a driver's license bearing her 1997 birth date and her address, along with images of a CareCredit card in her name and a Bank of America card in her name.

29. Ms. Gurney does not have a Bank of America card.

30. She asked Synchrony to mail her copies of the license and cards. Synchrony told her it would reopen the investigation.

31. In February 2026, Ms. Gurney called Synchrony again to dispute the reasons given for the January denial. This was her third request that Synchrony investigate the same Charge.

32. Synchrony sent Ms. Gurney a fraud affidavit dated February 19, 2026, listing the Charge. On the affidavit, Ms. Gurney marked the Charge "not authorized," stated that she did not know the identity of the person who used her Account, signed the form, and wrote a statement explaining the history of her dispute and returned it.

33. In that statement, Ms. Gurney told Synchrony she had received the transaction documentation the clinic had sent to Synchrony.

34. That documentation showed the patient’s date of birth as January 30, 1987. Ms. Gurney’s date of birth, on both her driver’s license and her Synchrony account is January 30, 1997.

35. The listed phone number on the documentation is not Ms. Gurney’s and is not associated with her Account.

36. Moreover, the signature does not match Ms. Gurney’s signature on her driver’s license.

38. Ms. Gurney also told Synchrony that an agent had said the license on file matches the information from the eye care center, even though the clinic's records list a different birth year than her license.

39. Ms. Gurney obtained a copy of the driver's license presented at the clinic. It bears Ms. Gurney's name and information but another person's photograph and year of birth.

40. Ms. Gurney has repeatedly disputed this account with Synchrony since October 2025.

41. Ms. Gurney was not responsible for the fraudulent charges, and Synchrony forfeited its right to collect the fraudulent charges from Ms. Gurney because it failed to comply with its obligations under the FCBA.

**Count I**
**Violations of the Fair Credit Billing Act**
**(15 U.S.C. § 1666 et. seq.)**
**(Synchrony Financial)**

42. Ms. Gurney re-avers and incorporates all other factual allegations set forth in this Complaint.

43. The FCBA governs a creditor's substantive conduct regarding billing and billing disputes. 15 U.S.C. §§ 1666–1666j.

44. Synchrony is a "creditor," and the Account is an "open end consumer credit plan," as those terms are defined by the Truth in Lending Act. 15 U.S.C. § 1602(g), (j).

45. The Charge, and the interest and late fees Synchrony assessed because of it, constitute a "billing error" as defined by the FCBA. The Charge reflects an extension of credit that Ms. Gurney did not make and did not authorize, for goods or services she never received. 15 U.S.C. § 1666(b)(1)–(3); 12 C.F.R. § 1026.13(a).

46. On December 11, 2025, Ms. Gurney gave Synchrony written notice of the billing error through her complaint to the Consumer Financial Protection Bureau, which the CFPB forwarded to Synchrony.

47. The written notice was timely. Synchrony received it within 60 days after it transmitted the first periodic statement reflecting the Charge.

48. The written notice enabled Synchrony to identify Ms. Gurney and the Account. It stated her belief that the Account contained a billing error, gave the approximate amount of the error, and explained why she believed it was an error. See 15 U.S.C. § 1666(a)(1)–(3).

49. Ms. Gurney later disputed the Charge with Synchrony in writing again.

50. Ms. Gurney also sent a dispute through the CFPB complaint process and through the signed fraud affidavit Synchrony sent her, dated February 19, 2026. In that affidavit she stated that the Charge was not authorized and that the clinic's records showed a different date of birth, phone number, and signature than her own.

51. Upon receiving a written notice of a billing error, the FCBA requires a creditor, within two complete billing cycles and in no event later than 90 days, to either "make appropriate corrections in the account of the obligor" or "send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement." 15 U.S.C. § 1666(a)(3)(B); 12 C.F.R. § 1026.13(e), (f)

52. If the creditor determines that no billing error occurred, it must first conduct a reasonable investigation. It must also give the obligor, upon request, copies of documentary evidence of the obligor's indebtedness. 12 C.F.R. § 1026.13(f). Synchrony failed to comply with these requirements.

53. Synchrony failed to conduct a reasonable investigation before concluding that the Charge was valid. It never contacted Ms. Gurney with questions about the transaction and never sent her the signed transaction documents it had promised so she could confirm whether the signature was

hers. It also disregarded the merchant's own records, which list a different date of birth, phone number, and signature than Ms. Gurney's.

54. Synchrony's January 2026 explanation rested on assertions it did not substantiate, including that products from the Charge were shipped to Ms. Gurney's address. Ms. Gurney received no such products, and Synchrony never provided any shipping or delivery records supporting its assertion.

55. Ms. Gurney asked Synchrony for copies of the driver's license and cards it claimed to have had on file. Synchrony failed to provide them.

56. Synchrony failed to make appropriate corrections to the Account. It did not credit the Charge or the interest and late fees that resulted from it.

57. Because Synchrony failed to comply with the FCBA, it forfeited its right to collect the disputed amount and any finance charges on it, up to the limit set by statute. 15 U.S.C. § 1666(e).

58. As a result of Synchrony's violations of the FCBA, Ms. Gurney suffered actual damages, including but not limited to out-of-pocket expenses, embarrassment, humiliation, and other mental and emotional distress.

59. Ms. Gurney is entitled to actual and statutory damages for Synchrony's violations of the FCBA. 15 U.S.C. § 1640(a)(1)–(2). She is also entitled to an award of attorney's fees and costs. 15 U.S.C. § 1640(a)(3).

**Demand for Trial by Jury**

59. Ms. Gurney demands trial by jury in this case.

**Conclusion**

WHEREFORE, Ms. Gurney prays that the Court enters a judgment for actual, statutory and punitive damages against the Defendants, jointly and severally; for her attorney's fees and costs; for prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this12th October, 2026

By: */s/ Nicola Yousif*
Matthew McKenna, Esq. (MA BBO# 705644)
Nicola Yousif, Esq. (MA BBO# 679545)
Shield Law, LLC
218 Willard Street
Quincy, MA 02169
T: (508) 588-7300
E: nick@shieldlaw.com
matt@shieldlaw.com

*Attorney for Plaintiff,*
*Alexandra Gurney*